272      C., B. & Q. R. R. Co. v. Rosenfeld.      [Sept. T.

Opinion of the Court.

# The Chicago, Burlington and Quincy R. R. Co.

### v.

# Max Rosenfeld.

Negligence — *injury at street-crossing.* In a suit against a railroad company for injury to the plaintiff, alleged to have been occasioned by the negligence of the defendant, it appeared the plaintiff was injured by a collision while attempting to cross the defendant's track upon a public street; that there were two or more main tracks at the place of the accident, and that the plaintiff was detained with his horse and wagon by a train of cars of another company, on the track next to him, and that as soon as this train passed, he started to drive across the track, there being a train of defendant backing across the street on one of the other tracks, which struck his horse and wagon. It also appeared that this train was moving at the speed of four or five miles per hour, that the bell was being rung, that a sufficient number of men were in charge of the train, and that there was a flagman at the crossing in the discharge of his duty. The weight of evidence also showed that the flagman hallooed to plaintiff to stop, and made efforts to keep him from crossing. It was *held*, that, under this state of facts, a verdict in favor of the plaintiff and against the defendant could not be sustained.

Appeal from the Superior Court of Cook county ; the Hon. William A. Porter, Judge, presiding.

Messrs. Walker, Dexter & Smith, for the appellant.

Mr. John Lyle King, for the appellee.

Mr. Justice Craig delivered the opinion of the Court :

This was an action brought by appellee, to recover damages of appellant for injuries sustained by him, resulting from a collision which occurred about the middle of the day of October 9th, 1872, at a point where the road of appellant crosses Morgan street, in the city of Chicago.

A trial was had in the Superior Court of Cook county, which resulted in a verdict for appellee for the sum of $750.

The defendant brings the cause to this court by appeal, and insists upon a reversal of the judgment mainly on the ground that the verdict is against the weight of evidence.

We have carefully examined the testimony preserved in the record in this case, and we are satisfied that the verdict is manifestly against the weight of evidence.

. Reluctant as we may feel to reverse on the ground that the verdict is not sustained by the evidence, it is, however, the settled doctrine of this court to reverse if there is a total failure of evidence, or if the verdict is manifestly against the weight of evidence. *Lowry* v. *Orr*, 1 Gilman, 70; *Wilson* v. *Bevans*, 58 Ill. 233.

The record shows that where the accident occurred, there are two or more main tracks; that appellee, while passing north with his horse and wagon, on Morgan street, was stopped at the crossing by an Illinois Central train, which was standing on the south track, across Morgan street; that appellee stood there some fifteen minutes, when this train moved forward to the east, and appellee started to drive across the track; that at the same time the train started east, a train of six or eight flat, freight cars, belonging to appellant, came from the east going west, on the track north of the one on which the other train was moving, with the engine on the east end of the train, pushing it; and as appellee attempted to cross, his horse was struck by the westward car of appellant's train. The horse was so injured he had to be killed. The wagon was damaged, and appellee was thrown out on the street and injured.

Appellant's train was moving west at the speed of four or five miles per hour, the bell was being rung, and four men were in charge of the train, and there was a flagman at the crossing in the discharge of his duty.

Thus far there seems to be no dispute in regard to the facts.

It is, however, claimed by appellee that, when the Illinois Central train moved east, he was told by the flagman to go ahead, and he moved up, and the collision occurred; and this seems to be the controverted fact in the case.

Upon this point, appellee called three witnesses. The first one, Wendellsohn, swears he was standing at the crossing,

waiting to cross the track, going north; that when the train started east, the flagman moved his flag to cross; he started, went two feet, saw the cars backing up, and the flagman called to them to stop; told everybody to stop, with his flag.

Appellee then called one Fink, who testified that when appellee started to cross, the flagman told him to go, and the cars came along and struck him.

Joseph Lewis was also called, and testified, just as quick as the train went from the west going east, "Go ahead," the flagman said, and waved his flag.

The appellee also swears he was told to cross, by the flagman, and was not directed to stop.

Upon this point the appellant called six witnesses, who were present, and heard and saw what was done, all of whom testify that appellee was not directed to cross, and that the flagman waved his flag and hallooed to the men to stop.

The flagman, in his evidence, says: "I flagged the man that was on the south side, then the men that were on the north. After I flagged, I hallooed for them to keep back, there was a train coming. The appellee drove on, and paid no attention. It seemed the more I hallooed, the more he hurried up—whipped his horse with the lines, and tried to hurry. The men on the north side stopped, the men behind appellee stopped. Did not tell anybody to go ahead after the train went east. Never made any motion for any one to go ahead."

Here is the evidence of six witnesses who were present and saw the accident. All seem to agree, in substance, that efforts were made to keep appellee from crossing, and that he was not directed to cross the track.

There is also another fact that seems to corroborate this evidence, and that is the fact that no other person attempted to cross the track, although there were a number of persons waiting to cross, both footmen and some with teams.

Taking the whole evidence together, we are clearly of opinion that the weight of the testimony is with appellant, and we are satisfied the case should go before another jury.

The judgment is reversed and the cause remanded.

*Judgment reversed.*