## Illinois Northern Railway Company v. John D. Casey, Administrator.

### Gen No. 12,781.

1. HORSE—*when fright not caused by escaping steam.* Held, from the evidence in this case, that the horses in question were not frightened by the noise and steam from the defendant's engine, as averred in the declaration, and that, therefore, the injury sustained was not attributable to such defendant.

2. REVERSAL WITHOUT REMANDMENT—*when will be ordered.* A reversal without remandment will be ordered where the Appellate Court finds the facts contrary to the findings made in the trial court.

Action on the case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Reversed, with finding of facts. Opinion filed December 11, 1906.

**Statement by the Court.** On August 29, 1902, and long prior thereto the Illinois Northern Railway Company, appellant, was operating a steam railroad with tracks lying in and along the south side of Twenty-sixth street, one of the public streets in the city of Chicago. At that time Frank Ruzika was between nineteen and twenty years of age, and was employed by one O'Connor to drive a scavenger or garbage wagon. At the time of the injury Ruzika had worked for O'Connor about three months. He had also worked for her about a year before that. On August 29, 1902, Ruzika was driving a team of horses attached to a wagon having about a half a load of garbage, west on Twenty-sixth street. He arrived near Washtenaw avenue, a street running north and south, between 7:30 and 8 o'clock. There were two street car tracks in the middle of Twenty-sixth street, and Ruzika was driving in the north track. One of the horses he was driving had been driven by him from nine months to a year and the other from two to three months. The

same horses had been driven by another driver, O'Connell, twice a day for a couple of months along Twenty-sixth street past the place where Ruzika was injured, and were accustomed to meet and pass locomotives and theretofore had always acted quietly. On the morning in question switch engine No. 1206 belonging to the C., B. & Q. Railroad Company, in charge of appellant's servants, was switching cars on these railroad tracks. It was going west toward or was near the intersection of the railroad tracks with California avenue, which is a block west of Washtenaw avenue. When Ruzika was at or near Washtenaw avenue and was moving slowly or his team was standing in the street, the engine approached from the east going in a westerly direction and passed him, blowing off, it is claimed, a large volume of steam with such force as to carry it across the street and to cause it to envelop the team. The engine passed on west beyond the team. The horses while thus enveloped in steam, it is claimed, became frightened and ran away. They ran over to the south curb of the street, and as the front wheels of the wagon struck the curb Ruzika was thrown from the wagon, receiving the injuries which resulted in his death. Ruzika left him surviving his father, mother and three brothers.

This suit against appellant was brought in the Superior Court by appellee as administrator of his estate and the trial resulted in a verdict and judgment against appellant. From that judgment this appeal is prosecuted.

WEST, ECKHART & TAYLOR and WILLIAM ROTHMANN, for appellant.

E. L. UPTON and W. S. JOHNSON, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

Among other grounds of reversal urged is, that the

verdict is against the weight of the evidence and contrary to the law.

No question arises in this case as to any wanton or wilful conduct on the part of defendant's servants. That question cannot arise under the declaration, which avers that the defendant recklessly, negligently and improperly allowed steam to escape through the locomotive, making a loud and unusual noise, whereby, etc. The word recklessly used in characterizing the act of defendant's servants means no more than negligently. H. A. & B. R. R. Co. v. Sampson, 112 Ala. 425.

It is urged that the evidence fails to prove any negligence on the part of appellant, and that it fails to show that the deceased himself at and immediately prior to the time of the accident was in the exercise of ordinary care for his own safety, and further that the evidence tends to show that the deceased was guilty of contributory negligence.

On the question of appellant's negligence, the testimony of the witnesses for appellee was contradictory and irreconcilable. William Mickow testified that he was sweeping the sidewalk in front of his home at the northeast corner of Washtenaw avenue and Twenty-sixth street when a young man was killed in the latter part of August, 1902; "he was watching the young man come along, and there was an engine pulling west on Twenty-sixth street, and it began to blow off steam and the horses started to run, and as they ran the engine kept on going west, and the horses were in the steam. The engine got ahead of the team, which ran about one hundred feet and then turned south across the railroad track. When the team started the man fell off the seat and was pulled along hanging to the harness and finally got under the wheels of the wagon at the time the wagon struck the curb. The engine was on the south side of Twenty-sixth street and the steam came from the whistle and from the driving

wheels and blew to the north across the street.'' On his cross-examination this witness said that the engine had passed the wagon and was two hundred feet away when the team started south. As the horses started south the man fell off the wagon and finally reached the dashboard and then got down on the pole, and by that time the wagon reached the curb where he got hurt.

It will be observed that this witness on the direct examination stated the man fell off the wagon when the team started and was dragged along by the harness to the curb where the wheels of the wagon passed over him, which is a very different account of what happened from that given in his cross-examination.

Appellee's witness, Joseph Trude, did not see the accident. He heard the noise of the engine blowing steam, and had heard it frequently before that. When he saw the wagon it was close to the curbstone and the engine was standing still about one hundred feet west.

Elizabeth Trude saw the accident but did not remember much about it, and did not know the circumstances. She testified, ''I did not see the engine, but I seen the whistle blow.''

Joseph O'Connell testified that Ruzika had worked for Miss O'Connor two or three months before he was injured, and that he had worked there over a year before that time, for nine months or a year; that the witness had driven one of the horses for eight months, and the other for nearly three years, on a garbage wagon, and drove them after Ruzika died; that he drove them along Twenty-sixth street, and at Sixteenth street and Lincoln street at the Burlington tracks; that when the horses were near an engine and saw it they acted quietly.

Lewis C. Johnson, an employe of the W. W. Kimball Co., testified that he was on the third floor of the warehouse of that company on the northwest corner of Twenty-sixth street and Washtenaw avenue in the west part of the building fronting on Twenty-sixth

street, and that he was looking out of a window on August 29th, and his attention was drawn to a young man standing on the pole of his wagon. Just at that moment he heard an engine not seventy-five feet west of there drawing off steam, and then he noticed the horses running away. The horses ran west fifteen or twenty feet in Twenty-sixth street and turned south and got mixed up between the railroad tracks. The jar of the wagon hitting the tracks threw the young man off the wagon on to the wheels of the wagon and "jabbed him in between the tracks and wagon. When they struck the curb, the young man fell off the tongue of the wagon between the railroad track and the wagon." This witness further said that at the time he first saw the young man on the pole of the wagon the horses were standing perfectly still from fifteen to twenty feet west of Washtenaw avenue, and there was no steam blowing off; that the steam commenced to blow off about a minute or a half a minute after he first saw him; that the engine was then backing off the sidetrack on to the main track about seventy-five to one hundred and fifty feet from the wagon going west.

This witness had seen that engine there before that time from six to a dozen times a day, and had seen other locomotives blow off steam there a great many times.

The testimony of this last witness seems to be the clearest and most consistent of any of the witnesses for appellee. His testimony, however, does not agree with that of any of the other witnesses called by appellee in several material particulars.

The witnesses for the appellant, Everingham the engineer on the locomotive, Block the fireman, Nokes in charge of the switching crew, Breckenridge a switchman, Buckley a switchman, all unite in saying that the locomotive left the roundhouse at seven o'clock that morning and that steam was blown off shortly after leaving the roundhouse for a few minutes and not afterwards during that forenoon, and that no steam

escaped from the engine except the necessary exhaust steam in working the engine, and that was through the smoke stack.

The witnesses Zelenka and Simek were going together to the Kimball Co. factory where they were employed. Zelenka testified that he was near the alley on Twenty-sixth street about one hundred feet from the wagon when he first saw it, and that he saw the team just starting as if it had been standing still. The driver was on the tongue of the wagon between the horses. He had not seen the engine.

Simek testified that when he first saw the wagon it was crossing Twenty-sixth street toward the curbstone and the driver was reaching down apparently for the line which was hanging down; that he saw the driver reach down near the horse and the horse made a jump and the driver fell off. He saw an engine near California avenue, but did not pay any attention to it; he did not notice any steam blowing off and heard no loud noise.

Considering the contradictory statements of appellee's witnesses, and taking the evidence all together, the fact seems to be established by the weight of the evidence that the locomotive had passed by the team and was some distance ahead of it to the west at the time the team started to run away. The further fact is testified to by all the witnesses who observed the movement of the team, that when the team started it went west a short distance and then turned to the left as if to cross the track which the locomotive had just passed over. This movement of the team indicates that it did not start to turn in towards the point from which the loud noise and steam came because of fright produced thereby. The natural result of the team being frightened by the steam and noise would be to cause them to turn in the opposite direction from whence it came. These considerations and the evidence of Simek tend to convince us that the movement of the team was produced by another cause than the

noise or the steam from the engine, namely, that the driver had dropped one line and stepped down upon the wagon tongue to reach for it, having the other line in his hand, and in reaching for the line caused the horses to start and in trying to stop them, pulled them out of their course to the left and across the curb.

We have examined all the testimony in this cause with great care and we are satisfied it does not sustain the verdict. The great preponderance of the evidence is in favor of the defendant. We do not think that any more steam was escaping from the engine at the time it passed the deceased than was necessarily exhausted in the working of the engine. In our opinion the great preponderance of the evidence shows that the team was not frightened by the noise and steam from the engine, as averred in the declaration. It is our duty, therefore, to reverse the judgment. C. & E. R. R. Co. v. Meech, 163 Ill. 305-308; C., B. & Q. Ry. Co. v. Rosenfeld, 70 Ill. 272; C. & A. R. R. Co. v. Gretzner, 46 id. 74-77; Hawk v. C., B. & N. R. R. Co., 147 id. 399-402.

The judgment is reversed with a finding of fact.

*Reversed with finding of fact.*